Helen V. Oehlke v. Commissioner.
Oehlke v. Commissioner
Docket No. 6212-65.
United States Tax Court
T.C. Memo 1967-144; 1967 Tax Ct. Memo LEXIS 118; 26 T.C.M. (CCH) 663; T.C.M. (RIA) 67144; June 28, 1967
*118 Held: Petitioner may properly deduct 90 percent of the costs she incurred in making a trip to Europe. Her expenses are deductible under sec. 162(a), I.R.C. 1954, and section 1.162-5(a)(1), Income Tax Regs.
Arthur L. Cain, for the petitioner. Donald H. Richards, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The only issue for our decision is whether petitioner is entitled to deduct the cost of a European tour under section 162, Internal Revenue Code of 1954. [1] More particularly, the question is whether the cost of the tour constitutes a deductible education expense within the meaning of section 1.162-5(a)(1), Income Tax Regs. *119 This section of the Regulations allows a deduction for education expenditures undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer in his employment or other trade or business. Respondent disallowed the cost of the tour as a deduction and determined a deficiency in income tax for 1963 of $311.91. Findings of Fact Some of the facts have been stipulated and are found accordingly and adopted as our findings. Petitioner is Helen V. Oehlke, a single woman with legal residence in Lorain, Ohio. She filed her Federal income tax return for the calendar year 1963 with the district director of internal revenue in Cleveland, Ohio. Petitioner, hereinafter sometimes referred to as Helen, is by profession a high school teacher of art, art history and art appreciation. During the year 1963 she was employed by the Lorain, Ohio Board of Education as a teacher of these subjects. Helen, who became 64 years of age on September 16, 1963, had taught art, art appreciation, art history and pottery in the Lorain public schools since 1929. She holds a permanent *120 life certificate to teach in the State of Ohio. In 1963, during the regular summer vacation period, Helen traveled to Europe with a tour known as "Caravan Tour No. 890." She left New York on July 26, 1963, by ship and returned to New York on August 29, 1963, by plane. The expenses incurred by Helen in making this trip amounted to $1,457.25. She traveled alone in the sense that no relative or any person of her prior acquaintance accompanied her. Further, she did not take the trip to fulfill any requirement of the Lorain, Ohio Board of Education. Helen had long desired to take a European tour which would enable her to perceive personally many of the great works of art which were the subject matter of her teaching. However, due to the poor health of her parents she was not able to make the journey until the summer of 1963. At this time, she traveled to Europe in the belief that firsthand observation and study there of the important artistic objects and architectural masterpieces would prove beneficial to her in the practice of her profession. She felt that the more she as a teacher had seen and known firsthand, and could speak of firsthand, the more persuasive and impressive she could *121 be to her students in classroom presentation. She felt that the trip was something she "needed," something that she "should have," and was an undertaking upon which she should have embarked long before. It is customary among teachers of art and art history to make artistically oriented tours of Europe. The exact itinerary of Helen's tour, and the extent of the educational activity she engaged in while on tour is detailed by the evidence of record. Helen selected Caravan Tour No. 890 only after she had given thoughtful deliberation and attention to her needs and purposes. This tour was not advertised as an art tour as such. Many tours are so advertised. Some are even formally associated with universities and entitle the tourist who successfully completes the tour to certain academic credits. Helen, however, had not been impressed with the professional integrity of such tours. She checked the contents of many tours on an "item for item and place for place" comparison, and concluded finally that the Caravan No. 890 was more "educational," for her purposes, then the other tours. For example, many tours that purported to be educational in nature included "night club visits and that sort *122 of thing." On the basis of her knowledgeable comments at trial and her professional experience, we find that Helen is and was a person of considerable artistic erudition. Her needs did not lie in the realm of formal instruction. She received from the organized tour itself no lectures or instruction. She did hear lectures available to the general public at museums and other public places she visited. These were given by professional guides. To a large extent, however, Helen disassociated herself from the Caravan Tour No. 890 and struck out on her own to see the objects of art and architectural masterpieces upon which her courses of instruction in Lorain, Ohio, were based. Helen was in the fortunate position of knowing the location of these works in advance, because she had considerable knowledge of them in the academic sense. While many of her fellow tourists on Caravan Tour No. 890 indulged in the activities with which tourists so frequently occupy themselves, such as "shopping," "having their hair done * * * and things like that," Helen elected not to use her limited time in this manner. To Helen, the time was much too valuable to be expended in these activities and she used almost *123 all available time to see and study artistic objects that she would not otherwise have seen. In selecting Caravan Tour No. 890, it is clear that Helen was opting for a tour which would physically bring her to the places and things which she felt she needed to see firsthand. She wanted a minimum of worry with planning her travel from place to place in Europe, and with meals, lodging, housekeeping and the everyday necessities of life. In short, she wanted the maximum freedom to study the art and architecture which were important to her, once she had arrived at a given location. The tour she selected, the directors of which were well-educated, English-speaking people who could communicate with her, was admirably suited to fill Helen's needs. As she traveled through Europe, Helen took extensive notes on the works of art and architecture which she saw. She also took many photographic slides. These were for use in her classroom presentations and the speeches she felt she would likely give to civic groups upon her return home. It is clear that Helen "studied" art during her month's excursion through many of Europe's well-known centers of artistic interest. Her exact itinerary and the *124 specific works of art which she observed and studied need not be detailed herein although they are carefully detailed in her testimony. Suffice it to say, she visited 11 countries in less than one month's time in Europe and saw many galleries, museums, universities, palaces, cathedrals, churches, and other structures, and their artistic contents of world-wide renown. Each day of the tour she spent many hors in this artistic study and observation, almost to the exclusion of other tourist activities. On her return to Lorain, Ohio, Helen resumed her art teaching when the school year commenced in September. She continued to teach throughout the 1963-64 and 1964-65 school years, retiring unexpectedly in July of 1965. As anticipated, she has given lectures on art to civic groups, as well as to her formal classes, and has utilized the notes and slides she made while on tour. On her passport application, the purpose of the trip described above was given as "pleasure." There is a space provided on the application form wherein the purpose of the proposed trip is to be inserted. Contrary to Helen's instructions, the clerical employee of a State Court in Lorain County, Ohio, who completed *125 and certified the passport application for her, inserted the word "pleasure" in this space. The clerical employee also gave the wrong color for Helen's hair. Helen was very unhappy about these errors, but decided not to "make a big thing of it" and did not ask the employee to retype the application, as the employee informed her she would get the passport in any event. On July 26, 1965, respondent disallowed as a deduction the cost of Helen's tour, $1,457.25, and determined a deficiency in her income tax for 1963 in the amount of $311.91. It is undisputed, however, that Helen made the European trip and incurred the amount of expense claimed. On the basis of the entire record, we find that Helen made the artistically educational tour in question primarily to aid her in the practice of the profession at which she had labored many years, the teaching of art, art history and art appreciation, and to improve the skills required by her in her employment. Opinion Section 162(a), Internal Revenue Code of 1954, provides in pertinent part as follows: (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred *126 during the taxable year in carrying on any trade or business * * * In amplification of section 162(a), supra, as it applies to educational expenses, respondent has promulgated the following regulation: [2]
§ 1.162-5 Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business * * * The parties are agreed that this subparagraph of the Regulations, as it existed during the taxable year in issue, is controlling. The trip was not made to meet the requirements of Helen's employer, and if the cost of her trip qualifies for deduction treatment, it cannot do so under section 1.162-5(a)(2), Income Tax Regs. *127 , which allows deductions for certain expenditures made to meet an employer's retention requirements. We are satisfied on the evidence that Helen's trip was not taken in order to obtain a new position or a substantial advancement in position or for any other purpose prohibited by section 1.162-5(b), Income Tax Regs., according to its provisions during the taxable year in issue. Therefore, the only question for our decision is whether the costs of the tour were incurred by Helen primarily for the purpose of maintaining or improving skills required by her in her professional employment as a teacher of art and related subjects. This is the inquiry called for by section 1.162-5(a)(1), Income Tax Regs., supra, and we agree with the parties that this subparagraph is controlling. Accordingly, the issue appears to be purely one of fact. See e.g., Manoel Cardozo, 17 T.C. 3, 7 (1951), a case involving a tax year during which no predecessor section of the Regulations existed, but whose proper disposition depended upon the same essentially factual decision called for by section 1.162-5(a)(1), Income Tax Regs. *128 As indicated in our Findings of Fact, we are persuaded on the basis of the entire record that Helen's motive in taking the tour was to maintain or improve her skills as a teacher of art, art history and art appreciation. Further, in the event it is not sufficiently clear from our Findings, we are convinced that the serious study and first-hand observation which Helen persisted in throughout the tour did in fact maintain or improve skills she required in her employment. Necessarily, this conclusion is dispositive of the matter in issue. There remains the question of an allocation between business and personal expenses to be dealt with. Respondent maintains, of course, that the whole cost of the tour was personal in nature and no portion should be allowed as an ordinary and necessary business expense deduction. It is beyond dispute that Helen took deep personal pleasure in her brief but intensive observation of the works which formed the core of her professional calling. However, she cannot be denied the deduction on the broad ground that her work is pleasurable to her. Helen, by all appearances, is one of the fortunate few who take enjoyment from the work in which they earn their *129 living. She is a dedicated teacher of art and related subjects. We have found as a fact that she incurred the costs at issue primarily to maintain or improve the skills required by her in this work. Respondent argues additionally that the cost of education expenditures for travel are generally not deductible, citing section 1.162-5(c), Income Tax Regs., which provided as follows during the taxable year before us: (c) In general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible. By its terms, this section of the Regulations clearly does not exclude the deductibility of all travel expenses. Allocated portions of educational travel undertaken primarily for business purposes have been allowed in at least two Memorandum Opinions of this Court, upon which petitioner relies heavily. See Alan T. James, T.C. Memo. 1964-49; Sid Neschis, T.C. Memo. 1963-191. The deductibility of educational travel is not precluded by section 1.162-5(c) of the Regulations when the travel is undertaken primarily for the *130 purposes made deductible by section 1.162-5(a)(1). In the James and Neschis cases, relied upon by petitioner, supra, we applied the doctrine of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), and allowed as a deduction the estimated nonpersonal expenses of educational travel undertaken primarily for legitimate business purposes. The Cohan doctrine was specifically mentioned and applied in Neschis, supra.We apply it here. The evidence is convincing that Helen spent very little of her time in Europe for any social or personal activities. Almost all of her waking hours were devoted to activities directly related to and connected with her efforts to improve her teaching skills. However, there are a few hours unaccounted for which we can only conclude were spent in personal pursuits. Considering all the evidence before us, direct and circumstantial, including Helen's demeanor, candor and appearance as a witness, we conclude that 90 percent of petitioner's costs in making the trip were directly related to her employment as a teacher of art and related subjects and incurred to improve her teaching skills. She incurred total costs of $1,457.25. Accordingly, *131 petitioner may properly deduct only $1,311.53, and the remaining $145.72 must be regarded as nondeductible personal expense. This allocation seems fair and reasonable on the entire record. To reflect the necessary adjustments. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Unless otherwise noted all references to section 1.162-5, Income Tax Regs. shall be to that section as it existed during the taxable year in issue. This section of the Regulation has recently been amended. T.D. 6918↩, filed May 1, 1967. The amendment does not bear upon our decision in the present case.